[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
RE: DEFENDANT'S MOTION FOR CONTEMPT POST JUDGMENT DATED DECEMBER 28, 2001 (CODED 112 AND 112.50)
The defendant has filed a motion for contempt alleging two issues: (1) the failure of the plaintiff to pay court ordered child support in the amount of $200 weekly; and (2) a failure of the plaintiff to pay to the defendant her equal share of any profit or loss from the sale of property known as 496 Wolcott Street, Waterbury, Connecticut.
These claims will be discussed seriatim.
A. THE DEFENDANT'S CLAIM REGARDING CHILD SUPPORT
The court finds that when the marriage between the parties was dissolved on December 8, 2000, that the plaintiff was ordered to pay to the defendant $200 per week as child support. The parties are in dispute as to the amount of the child support arrearage. The court finds that as of June 14, 2002, the plaintiff owed to the defendant four weeks support in the total amount of $800. The burden of proving inability to pay rests upon the obligor. The court finds that the plaintiff has failed to meet his burden of proof and finds that he is in contempt of court. The court finds, based on time that was spent before the court on the issue of support, that a reasonable attorney's fee is $100, and orders the plaintiff to pay that sum to counsel of the defendant within thirty (30) days from the date this decision is filed.
B. THE ISSUE OF THE SALE OF THE FAMILY HOME CT Page 11517
The court finds that when the marriage between the parties was dissolved on December 8, 2000, that an order was entered that the real property known as 496 Wolcott Street, Waterbury, Connecticut, was to be sold and the parties were to share equally any profit or loss therefrom.
The court finds that the property was sold on January 26, 2001 for a total sale price of $100,000. The court finds, as shown on the closing statement dated January 26, 2001, that the net amount due to the plaintiff from the sale after deducting normal closing expenses, including the payoff of the first mortgage, was $44,378.66. In addition, the plaintiff was to take back a purchase money mortgage in the amount of $14,000. The plaintiff and the buyers made a further adjustment increasing the purchase money mortgage from $14,000 to $18,000, and reducing the net amount due to the plaintiff from $44,378.66 to $40,378.66. The net effect was that the plaintiff netted $58,378.66 including the $18,000 purchase money mortgage. In addition to that amount, the plaintiff also received a $1,000 deposit from the buyer, thereby increasing the net amount received from the closing to $59,378.66. The defendant claims that she is entitled to one-half of that amount. The court finds, from the evidence presented, that the parties intended that the net proceeds from the sale would also include a reduction for paying sums due to the plaintiff's father that he loaned the parties during the course of the marriage. The amount due to the plaintiff's father as of the date of closing was $52,796.56 leaving a net amount to be equally divided of $6,582.10. The court further finds that it was the intent of the parties that the debt of the plaintiff's father would be discharged from the proceeds of the sale of the family residence. The plaintiff claims that the $18,000 promissory note should not be considered as part of the net proceeds of the sale at this time since that note is in arrears. The court finds that it was the intent of the parties that the total proceeds that were received, whether in the form of promissory note or cash, are to be considered in determining the defendant's share from the sale of the family home. The plaintiff's father did not require that he be paid in full from the proceeds of the sale of the prior family CT Page 11518 residence at 496 Wolcott Street, Waterbury, Connecticut, and the plaintiff used those funds to invest in another home. The net result from following that procedure is that the defendant is still liable to the plaintiff's father for the funds that he advanced the parties during the time of the marriage.
The court finds that most of the time that was spent in this contempt proceeding was on the issue on how to treat the loan from the plaintiff's father in determining the net proceeds from the sale. The court finds it is clear from the testimony of the defendant herself that that loan was intended to be deducted from the gross proceeds of the sale in determining the net proceeds.
There was no credible evidence presented as to what a reasonable attorney's fee would be for counsel for the defendant regarding the contempt motion relating to the sale of the family home if the time that was spent regarding the treatment of the plaintiff's father's loan was to be excluded. The court therefore does not award any counsel fees involving the sale of the home. The court does order that the plaintiff pay to the defendant the sum of $3,291.05 within thirty (30) days from today's date. The court further orders that the plaintiff provide to the defendant a full release executed by his father within thirty (30) days from today's date releasing the defendant from any and all liabilities she may have to him for funds that he advanced the parties during the time of the marriage. If the defendant does not provide such a release; then the court orders that the property that the plaintiff purchased from the use of the funds for the sale of 496 Wolcott Street, Waterbury, Connecticut, immediately be sold and the net proceeds used towards reducing or discharging the obligation to the plaintiff's father.
Axelrod, J.T.R. CT Page 11519